## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

DEPRIEST GRAY                                                          PLAINTIFF

VS.                                            CIVIL ACTION NO. 3:17CV385-CWR-LRA

SUPERINTENDENT RONALD KING, ET AL                        DEFENDANTS

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Depriest Gray, *pro se*, and Attorney Tommy D. Goodwin, counsel for Defendants, appeared before the Court for a hearing conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  The hearing was conducted in part to determine whether or not Plaintiff's claims were supported by a factual or legal basis.

The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B), applies to prisoner proceedings *in forma pauperis* and provides that "...the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal --   (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."   Since Plaintiff was granted *in forma pauperis* status, Section 1915(e)(2)(B) applies to his case.

Plaintiff was a convicted felon in the custody of the Mississippi Department of Corrections [MDOC] and housed in the Central Mississippi Correctional Institution [CMCI] when the event he complains about began in July 2016.

1

Plaintiff gave sworn testimony describing and augmenting the claims set forth in his Complaint.   He testified that he was housed in general population at CMCF and then was abruptly moved to close-custody segregation on July 24, 2016.   Plaintiff remained in administrative long-term segregation from July 2016 until July 2017, approximately 12 months.   He was then moved to the East Mississippi Correctional Facility [EMCF] and placed in an incentive program.   This was a "step-down" (three-step) procedure which allowed him to be restored to general population.   He began regaining privileges, and he conceded at the hearing that he had received what he asked for as relief, custody restoration. But, he testified that he also "asked for punitive and emotional --- and emotional damages and monetary damages."

Plaintiff's claims are also described in his administrative remedy program [ARP] documents which he submitted to the Court and which were accepted into evidence at the omnibus hearing [20-28].   In his ARP, he complained that he was placed on administrative segregation because he was charged with escape from Clay County while he was out on court order.   He was placed in segregation before he received either a rules violation report [RVR] or a detention notice.   He was locked down on July 24, 2016, but did not receive a detention notice until August 31, 2016, and he was never served an RVR.   According to Plaintiff, this violated MDOC regulations that require that an inmate not be confined for more than 20 days in segregation while awaiting investigation and the issuance of an RVR on charges.

2

Plaintiff conceded that he did plead guilty to one escape charge in October 2016. However, his *second* escape charge was retired to the files—he never pleaded guilty to it, according to Gray.   He contends that the second escape charge is why he was punished by placement in long-term segregation, not the first one.

Plaintiff described the conditions of his confinement in his year-long segregation in his response to a Court order [11, p. 1] and in his testimony.   He lost several privileges, including the right to use athletic and recreational facilities and to walk around the prison. He also lost the right to perform general work detail and to access the library.   He could no longer have contact visitation and could not attend worship services allowed to the general population.   He also testified that for the first two weeks in segregation, he was provided no clothes.

Plaintiff named as Defendants Superintendent Ronald King; Michelle Jackson, Assistant Director of Offender Services; and, Patrick Garner, Correctional Supervisor at CMCF.   Michelle Jackson made the decision to place him on long-term segregation. Garner served the detention notice on Plaintiff, but it was late.   Plaintiff explained that to Garner, and Garner said he would check on it.   He never did.   Defendant King denied Plaintiff's plea for release from long-term segregation on appeal of his ARP.

The undersigned has reviewed and considered the pleadings and the hearing testimony and recommends that Plaintiff's claims against all Defendants be dismissed as

frivolous and, on the grounds that Plaintiff fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

To invoke the protections of the Due Process Clause, Plaintiff must have a protected liberty interest at stake.   A constitutionally protected liberty interest is "limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life."   *Sandin v. Conner,* 515 U.S. 472, 484 (1995). 12 months in administrative segregation is not atypical as punishment, particularly for an escape.   Indeed, long-term segregation is not considered an "atypical and significant" hardship of prison life.   *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir. 1996) (finding that administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest).   Generally, changes in custody status or confinement in segregation do not implicate a liberty interest.  *See Nathan v. Hancock*, 477 Fed.Appx. 197, 198-99 (5th Cir. 2012);   *Luken v. Scott*, 71 F. 3d 192, 193 (1995) (loss of opportunity to earn good time credits does not trigger Due Process protection); *Malchi v. Thaler*, 211 F.3d 953-958-59 (5th Cir. 2000) (change in custody status does not implicate a liberty interest because effect of classification on a prisoner's ultimate release date is too speculative); *Smith v. Horton*, 670 Fed.Appx. 872 (5th Cir. 2016)(no due process claim for long-term segregation, without more).

After he pleaded guilty to escape, Plaintiff was placed in administrative segregation for approximately 12 months and then was transferred to EMCF and placed in a sentencing

4

step-down program.    As the Court in *Pichardo* stated, "absent extraordinary circumstances, administrative segregation as such, being incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim."  *Id.*  Plaintiff does not contend that his conditions of confinement were severe, except that he went without clothes and was placed in a cold cell with no sheets for nearly two weeks when he was first placed in segregation.   The primary effect was that he lost certain privileges and the ability to move around his unit in general population rather than be confined to his cell.

Extraordinary circumstances were found by the Supreme Court in *Wilkinson v. Austin*, 545 U.S. 209 (2005), when it held that the use of solitary confinement in Ohio's Supermax facility did impose "atypical and significant hardship."   The Fifth Circuit also found that solitary confinement for 39 years under restrictive conditions in Angola was atypical and imposed significant hardships.   *Wilkerson v. Goodwin,* 774 F.3d 845, 854 (5th Cir. 2014).   Plaintiff's punishment did not approach the severity of the confinement described in these cases.

Plaintiff has not alleged any specific circumstances which would make his conditions sufficiently severe to give rise to a liberty interest under *Sandin.*   The undersigned has utilized the directives set forth in *Wilkerson* and *Wilkinson* and finds that no extraordinary circumstances render Plaintiff's confinement an "atypical and significant hardship" on him in relation to the "ordinary incidents of prison life."   "Two and a half years of segregation is a threshold of sorts for atypicality," and Plaintiff's 12 months in

5

restrictive housing does not meet the threshold. *Wilkerson*, 774 F.3d at 855.  His conditions of confinement in long-term segregation were typical for prison life. *Sandin* applies and due process rights did not attach; no constitutional claim has been stated.

Plaintiff alleged that he did not receive an RVR for escape, although he did receive a detention hearing.  He did attend a hearing, but the case manager just informed him why he was being placed in long-term segregation, according to Plaintiff.  He did not ask to bring witnesses and he was allowed to testify.  Plaintiff admitted that he was indicted and pleaded guilty in October 2016 to escaping from the Clay County jail; however, he claims the escape charge for which he received long-term segregation was retired to the file.  That was his second charge for escape, according to Plaintiff.  He does not believe that these Defendants followed MDOC procedure, because he should have been charged with escape in an RVR and not held for over 20 days until the investigation was completed.  This allegation does not rise to the level of a constitutional violation, however, as "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process." *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

The record in Plaintiff's case confirms that there was evidence to support his placement in long-term segregation.  He was provided a detention notice, attended a hearing, signed the administrative segregation agreement on September 13, 2016 [25, pp. 2-3], and was notified of his right to appeal.  The agreement he signed confirms that he

6

committed a felony while on escape from a community correctional facility. Plaintiff himself filed with the Court the supporting documentation regarding his placement in segregation. [22, 24, 25, 26, 27]. Even if the prison failed to follow its own MDOC policies regarding the issuance of an RVR, and the time limits for its service, no constitutional violation has been stated against these Defendants.

An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002); *see also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Under the circumstances of this case, wherein Plaintiff's punishment was not atypical for prison life, and did not impose significant hardships, no constitutional violation has been stated. Furthermore, the minimum requirements of due process were met before Plaintiff completed his year in long-term segregation.

Although the undersigned has not reviewed immunity issues on the merits, it is probable that these Defendants' qualified immunity defense would protect them from an award of a monetary judgment. Any request for injunctive relief is now moot, as Plaintiff is no longer housed in administrative or long-term segregation.

Having liberally construed the Complaint in favor of Plaintiff, and for the reasons set forth herein, the undersigned recommends that Plaintiff's claims be dismissed as frivolous and because he failed to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(i)(ii). Final Judgment in favor of Defendants should be entered.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; FED. R. CIV. P. 72(B); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 17th day of May 2019.


/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE

8